## CONOVER *v.* HECKER.

1. TRIAL—MOTION FOR DIRECTED VERDICT—FURTHER PROOF.

Introduction of further proof after defendant had moved for directed verdict at close of plaintiff's case *held*, not reversible error.

2. RELEASE—JOINT TORT-FEASORS—COLLECTION OF BALANCE FROM UNRELEASED TORT-FEASORS.

In action against three tort-feasors by person injured after enactment of statute permitting release of one of several tort-feasors for a consideration, the release of one tort-feasor did not preclude recovery of balance of damages from other tort-feasors (Act No. 303, § 2, Pub. Acts 1941).

3. MASTER AND SERVANT—LIABILITY FOR NEGLIGENCE OF EMPLOYEE TO BUILDING TENANT.

Owner and building manager were liable for negligence of their freight elevator operator, who was moving furniture of a tenant from one floor to another, for injuries sustained by plaintiff tenant when timber used to prop open elevator gates fell on plaintiff.

4. NEGLIGENCE—RES IPSA LOQUITUR.

*Res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence but do not compel such an inference.

5. SAME—NEGLIGENCE—ELEVATOR OPERATOR—EVIDENCE.
    Showing that a timber, which had been used to prop open a
    freight elevator gate while furniture was being loaded on top
    of elevator, fell down onto plaintiff was sufficient evidence to
    take case against building owner and operator to jury respect-
    ing negligence of their elevator operator.

6. DAMAGES—EXCESSIVE VERDICT—EVIDENCE—FOOT INJURY.
    Verdict of $1,354 for plaintiff tenant for injuries to foot sus-
    tained as result of negligence of freight elevator operator of
    defendant building owner and operator *held*, neither excessive
    nor against the overwhelming weight of the evidence.

Appeal from Wayne; Webster (Arthur), J. Sub-
mitted January 10, 1947. (Docket No. 79, Calendar
No. 43,611.) Decided April 8, 1947.

Case by William C. Conover against Christian
Henry Hecker, as trustee, and Reaume & Silloway,
Inc., a Michigan corporation, for injuries sustained
when he was hit by a piece of falling wood. Verdict
and judgment for plaintiff. Defendants appeal.
Affirmed.

*Voorhies, Long, Ryan & McNair* (*William John
Spicer,* of counsel), for plaintiff.

*Lacey, Scroggie, Dilworth, Lacey & Buchanan*
(*Benedict H. Lee,* of counsel), for defendants.

BUSHNELL, J. Plaintiff William C. Conover oper-
ates a printing office in the Cass Building in Detroit.
This building is owned by defendant Christian H.
Hecker, as trustee, and is managed by defendant
Reaume & Silloway, Inc.

On September 21, 1944, when Conover, then aged
81, entered the building to go to his office on the
fifth floor he found that the passenger elevator was
not operating. The janitor of the building unlocked
the basement door so that Conover could use the

freight elevator, as he had done on 25 or 30 other occasions when the passenger elevator was not operating. The freight elevator on this occasion was being used to move some furniture from the fifth to the second floor, and Conover was told to wait a few minutes. The bottom of the elevator was then about a foot and a half or two feet below the first floor level, with the basement elevator shaft guard gate down.

The elevator cage, about 6 feet square and 8 feet high, is roofed over with wire mesh. The furniture being moved was too long for the elevator cage and it was necessary to drop the elevator below the floor level and load it on top of the elevator cage. Because the shaft guard gates close automatically when the elevator leaves a floor level, it was necessary in this instance to use a piece of two by four as a prop to hold open the guard gate. While Conover was waiting, this six-foot piece of two by four fell down the shaft, struck him, and fractured the first metatarsal bone in his right foot.

The furniture that was being moved belonged to R. L. Polk & Company, who is also a tenant in the Cass Building. The elevator operator was an employee of the defendants. The furniture was being handled by employees of R. L. Polk & Company, who propped the gate open and directed the elevator operator. Conover settled with R. L. Polk & Company for the sum of $400, and gave them a release from liability. He then instituted a suit against the defendants resulting in a jury verdict of $1,354. The jury first announced its verdict as $1,754, whereupon the trial judge reminded the jurors that they had been instructed to deduct $400 from their gross verdict. The foreman then announced that because of this instruction the verdict should be $1,354, and to this all the other jurors agreed.

After the testimony of Conover and his physician had been taken, his counsel announced that plaintiff rested. The jury was then excused and defendants asked for a directed verdict on the grounds that their negligence had not been proven and that the release given to R. L. Polk & Company, an active tort-feasor, also released all the defendants. In the colloquy that ensued, the court stated that it was incumbent upon plaintiff to prove defendants' negligence, whereupon his counsel replied:

"Of course, my only other recourse, your Honor, is to call the defendants' own witnesses." ·

The court then permitted plaintiff to produce additional testimony, saying: "Well, call them. In other words, you have got to prove your case."

On appeal, among the questions raised by defendants is a renewal of their objection to this procedure. The situation is analogous to that presented in Oestrike v. Neifert, 267 Mich. 462, where we said:

"At the close of plaintiff's case defendant moved for a directed verdict and the court permitted plaintiff to introduce further evidence, and defendant contends that this should not have been done. There is no merit in the claim."

In support of the contention that the release of R. L. Polk & Company, a joint tort-feasor, operates to release the defendants, they cite Erkiletian v. Devletian, 299 Mich. 95. However, that case arose before the enactment of Act No. 303, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 14497a et seq., Stat. Ann. 1946 Cum. Supp. § 27.1683 [1] et seq.). Section 2 of that act provides:

"It shall be lawful for all persons having a claim or cause of action against 2 or more joint tort-

feasors to compound, settle with, and discharge, at any time prior to rendition of a judgment in said action, any and everyone or more of said joint tortfeasors for such sum as such person may deem fit, without impairing the right of such person or persons to demand and collect the balance of said claim or cause of action from the remaining joint tortfeasors, against whom such person, or persons, has such claim or cause of action, and nòt so released."

Plaintiff's cause of action arose subsequent to the passage of this act.

Appellants claim that the freight elevator operator at the time of the accident was not acting as an agent or employee of the defendants, but was acting under the direction and authority of others. This claim cannot be sustained in the light of our holdings in *Sikora* v. *Fellowcraft Club,* 195 Mich. 49; *Bradley* v. *Burdick Hotel Co.,* 306 Mich. 600.

Appellants contend that the court followed the rule of *res ipsa loquitur* without requiring proof of active negligence on the part of defendants, citing *Shelton* v. *National Valve & Manfg. Co.,* 300 Mich. 170.

The facts and circumstances in the instant case are distinguishable from those in the *Shelton Case,* where there were no facts from which an inference of negligence could be drawn. In passing, however, we direct attention to *Jesionowski* v. *Boston & Maine Railroad Co.,* 329 U. S. 452 (67 Sup. Ct. 401, 91 L. Ed. 355), decided January 13, 1947. In that case the court discussed the *res ipsa loquitur* rule, saying in part:

"A conceptualistic interpretation of *res ipsa loquitur* has never been used by this court to reduce the jury's power to draw inference from facts. Such an interpretation unduly narrows the doctrine as this court has applied it.

"This court said, in *Sweeney* v. *Erving*, 228 U. S. 233, 240 (33 Sup. Ct. 416, 57 L. Ed. 815, 818, Ann. Cas. 1914 D, 905), a decision which cut through the mass of verbiage built up around the doctrine of *res ipsa loquitur,* that '*res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference: that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict.' Thus, the question here really is not whether the application of the rule relied on fits squarely into some judicial definition, rigidly construed, but whether the circumstances were such as to justify a finding that this derailment was a result of the defendant's negligence. We hold that they were."

In the instant case the testimony shows that plaintiff's injury was clearly the result of the negligence of those who were moving the furniture from the fifth to the second floor. Defendants' elevator operator shared in this responsibility. His negligence was that of his employers.

Other questions raised by appellants regarding claimed improper admission of evidence, the trial judge's failure to grant defendants' motions for a judgment *non obstante veredicto,* and for a new trial, and the contention that the verdict is excessive and against the overwhelming weight of the evidence, have been examined. We find no reversible error.

The judgment is affirmed, with costs to appellee.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.